# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RICARDO WOODS,

|  | | |
|---|---|---|
| Petitioner, | : | Case No. 1:16-cv-643 |
| - vs - | | District Judge Michael R. Barrett |
| | | Magistrate Judge Michael R. Merz |
| TERRY A. TIBBALS, Warden, | | |
| Allen Oakwood Correctional Institution, | | |
| | : | |
| Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Ricardo Woods pursuant to 28 U.S.C. § 2254 with the assistance of counsel, is before the Court for decision on the merits. Woods filed his Petition June 14, 2016 (ECF No. 1). On Magistrate Judge Litkovitz's Order (ECF No. 4), the Warden filed both the State Court Record ("Record," ECF No. 10) and a Return of Writ (ECF No. 11). Woods then filed his Reply (ECF No. 17). To help balance the workload among Western Division Magistrate Judges, Judge Litkovitz transferred the case to the undersigned (ECF No. 18).

**Procedural History**

Petitioner Ricardo Woods was indicted by a Hamilton County grand jury on January 24, 2011, on counts of purposeful murder, felony murder, and felonious assault, all with firearm

1

specifications and with two counts of possessing a weapon n while under disability.  The next month he was indicted for felonious assault with a firearm specification on two other victims arising out of the same incident.  Woods was convicted by the trial judge on the weapons under disability counts and by a jury on all other counts except for purposeful murder.  He was sentenced to consecutive terms of imprisonment of fifteen years to life for murder, eight years each on the felonious assault counts, twenty-four months for having weapons under a disability, and three years on the firearm specifications.

Woods appealed and the First District Court of Appeals affirmed.  *State v. Woods,* 2014-Ohio-3892 (1st Dist. Sept. 10, 2014), appellate jurisdiction declined, 142 Ohio St. 3d 1422 (2015), *cert. den. sub nom. Woods v. Ohio*, 136 S. Ct. 420 (2015).  Following denial of certiorari, Petitioner filed the instant habeas corpus petition, raising the following grounds for relief:

> **Ground One**:  The admission of the victim's alleged identification by blinking violated Woods' Confrontation Clause rights, as the statement did not satisfy the constitutional test for the dying declaration exception.
>
> **Supporting Facts**:  The trial court erred in admitting testimony regarding the identification of Woods by the victim, who was paralyzed and unable to move other than by blinking at letters of the alphabet and a single photograph shown to him by police. Weeds was unable to cross-examine the victim regarding this identification in violation of his right to confront the witnesses against him. The identification was testimonial in nature because it was created by police, recorded on video, and intended to be introduced at trial. Woods therefore had a right to cross-examine the victim before the identification was introduced. Moreover, the statement was not a dying declaration because the victim's death was not actually imminent at the time it was made.
>
> **Ground Two**:  the victim's identification was made under suggestive circumstances and therefore presented a substantial likelihood of misidentification in violation of due process.

2

**Supporting Facts:** The victim's identification occurred under circumstances likely to give rise to a misidentification, including factors related to both the initial observation (lack of lighting, short duration, stress, etc.) and related to the time of the identification, which occurred in a hospital while the victim was under the influence of medications and was unable to communicate.

**Ground Three:** The trial court violated Woods' right to a jury trial by requiring Woods to demonstrate a pattern of race-based jury strikes before shifting the burden to the State to offer a race-neutral explanation.

**Supporting Facts:** During jury selection, the prosecution struck a number of African-American jurors. Woods is African-American and his alleged victim was white. The trial court incorrectly applied Batson by requiring Woods to demonstrate a pattern of race-based jury strikes before shifting the burden to the state to explain its use of peremptory challenges with a race-neutral explanation.

**Ground Four:** The trial court erred in certifying several witnesses for nondisclosure from Woods' counsel in violation of Woods' due process rights.

**Supporting Facts:** Ohio law only permits the nondisclosure of witnesses when there exists specific, articulable reasons to protect the witnesses' safety. The State failed to present a compelling case that the witnesses would have been in danger if their identities had been disclosed to Woods' counsel, particularly given that one of the witnesses was dead at the time the trial court certified his identity for nondisclosure. This violated Woods' due process rights.

**Ground Five:** The trial court erred in limiting the testimony of Wood's expert witnesses in violation of Woods' due process rights.

**Supporting Facts:** The trial court limited the testimony of Woods' eyewitness identification expert regarding statistics and national data on eyewitness misidentification, as well as regarding stranger and non-stranger misidentification.

**Ground Six:** The trial court improperly permitted the testimony of an unreliable jailhouse informant in violation of Woods' Sixth Amendment and due process rights.

3

**Supporting Facts:** The trial court permitted a witness to testify regarding statements Woods allegedly made to him during a very brief stay together at the local jail. Jail records revealed that the statement could not have been made at the time it was alleged, and testimony of the police who took the jailhouse informant's statement indicated that his disclosure was premised solely on his desire to broker a deal in his own criminal cases. Under these circumstances, the testimony was unreliable and should not have been admitted into evidence.

**Ground Seven:** The trial court violated Woods' due process rights by excluding medical and psychological records that would have documented the victim's state of mind.

**Supporting Facts:** The trial court precluded Woods from admitting evidence in the form of medical and psychological records that would have demonstrated his state of mind at the time of the crime and at the time he made his alleged identification.

**Ground Eight:** Woods received ineffective assistance of trial counsel in violation of his Sixth Amendment rights.

**Supporting Facts:** Woods' attorneys failed to raise various meritorious arguments, including a suppression claim under *Weatherford v. Bursey,* in violation of his right to counsel. In addition, Woods' counsel failed to properly present exculpatory evidence and further failed to properly instruct Woods' expert on the facts of the crime.

**Ground Nine:** The trial court erred in instructing the jury.

**Supporting Facts:** The trial court issued an instruction permitting an inference of guilt based on Woods' alleged flight absent sufficient evidence of Woods' motive. In addition, the trial court failed to instruct the jury on the Ohio identification statute in violation of his jury trial rights.

**Ground Ten:** Prosecutorial misconduct deprived Woods of this right to a fair trial.

**Supporting Facts:** During trial, the prosecution committed numerous instances of prejudicial misconduct, including lying to the trial court regarding the safety of a witness who was already deceased and by commenting upon Woods' compliance with an evidentiary ruling as evidence of guilt.

**Ground Eleven:** Woods' convictions were not supported by sufficient evidence and were against the weight of the evidence in violation of his due process rights.

**Supporting Facts:** The only evidence connecting Woods to the crimes was the unreliable and untested identification by the victim, who allegedly blinked at a single photograph while he was in the hospital, on medications, and paralyzed. Woods' conviction is therefore not supported by sufficient evidence.

(Petition, ECF No. 1 and 1-1).

# Analysis

**Ground One:  Confrontation Clause Violation**

In his First Ground for Relief, Woods claims the trial court violated his rights under the Confrontation Clause when it admitted into evidence an identification of him as the offender produced by having the murder victim, Chandler, blink his eyes in response to certain stimuli. Chandler had died by the time of trial and was not available for cross-examination.

This claim was presented on direct appeal as part of the first assignment of error and decided as follows:

> **[\*P17]** In his first assignment of error, Woods contends that the trial court erred in admitting into evidence Chandler's identification of Woods as the perpetrator. We first address Woods's argument that the admission of the identification violated his rights under the Confrontation Clause of the United States Constitution and that the identification constituted inadmissible hearsay.
>
> **[\*P18]** The Confrontation Clause of the Sixth Amendment generally prohibits the admission of testimonial statements of a

witness who did not testify at trial, unless the witness was unavailable for trial and the defendant had had the prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**[\*P19]**  But in *Crawford*, the court held that a dying declaration was one exception to this rule of inadmissibility. *Id.* at 56, fn. 6. As this court has recently held, dying declarations may be admitted as an exception to the rule set forth in *Crawford*, irrespective of whether the declaration is considered testimonial. *State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189, ¶ 64 (1st Dist.).

**[\*P20]**  In *Kennedy*, we held that Evid.R. 804(B)(2) comports with the common-law definition of a dying declaration when analyzing the exception to the rule in *Crawford*. *Id.* at ¶ 67. Evid.R. 804(B)(2) provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> [i]n a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death.

**[\*P21]**  In *Kennedy*, this court stated that, to qualify as a dying declaration under the rule, "the evidence must show that the deceased's statements were made under a sense of impending death that excluded from the mind of the dying person all hope or expectation of recovery." *Kennedy* at ¶ 41, citing *State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378, ¶ 40 (8th Dist.); *State v. Washington*, 1st Dist. Hamilton No. C-090561, 2010-Ohio-3175, ¶ 21; *State v. Ross*, 7th Dist. Mahoning Nos. 96-CA-247 and 96-CA-251, 1999 Ohio App. LEXIS 4859 (Oct. 12, 1999), cited in *State v. McGee*, 7th Dist. Mahoning No. 07-MA-137, 2009-Ohio-6397, ¶ 33. The declarant is not required to state that he believes he will not recover, as "the necessary state of mind may be inferred from circumstances at the time of the declaration." *Kennedy* at ¶ 42, citing *Ross, supra.*

**[\*P22]**  In this case, Chandler's statement was properly admitted as a dying declaration. According to Father Seher, Chandler was convinced that he was not going to survive his injuries, as Chandler requested the sacrament of Last Rites. And while Chandler's family had made contingent plans for rehabilitation in

> case Chandler would survive, the state presented ample evidence
> that Chandler himself had no hope of recovery.

*State v. Woods, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The Warden argues the First District's decision on this claim is entitled to deference under the AEDPA.  Petitioner acknowledges the deferential AEDPA standard, but asserts that the First District's decision is contrary to clearly established Supreme Court precedent (Reply, ECF No. 17, PageID 3974-77, relying on *Giles v. California*, 554 U.S. 353 (2008).

In *Giles* the victim's out-of-court statements were admitted by the California trial court to prove Giles had killed him on the theory that Giles had forfeited his right to object on the basis of the witness's unavailability because he had procured that unavailability by killing the witness. Justice Scalia, author of *Crawford v. Washington*, 541 U.S. 36 (2004), wrote for the Court in *Giles* and explained the difference at common law and therefore under the Confrontation Clause of the exceptions to confrontation for dying declarations and witness unavailability procured by the defendant.  The Court held that the second exception for defense-procured unavailability would not meet the Confrontation Clause standard without proof that the intent of the defendant was to silence the witness.  There is no **holding** in *Giles* about the scope of the dying declaration exception to the hearsay rule.  Rather the holding is about the defense-procured unavailability exception which is not at issue here.  The discussion of the dying declaration exception in *Giles*

is dicta.

The only other Supreme Court case about the dying declaration exception is *Shepard v. United States,* 290 U.S. 96 (1933).  In that case Charles Shepard was convicted of murdering his wife on the military reservation at Fort Riley, Kansas[1].  The victim suspected that her husband had poisoned her and voiced her suspicion to a nurse.  Justice Cardozo for the Supreme Court analyzed the case, which was on direct appeal rather than collateral attack, in terms of the common law of evidence as to what constituted a dying declaration.  The opinion nowhere so much as mentions the Confrontation Clause.

In arguing this Ground for Relief in the Reply, Petitioner focuses on facts which purportedly show Chandler's death was not imminent nor did he believe it was imminent at the time he made the identification.  He concludes:

> The Ohio court of appeals resolved the inquiry using the wrong standard for what constitutes a dying declaration under Confrontation Clause jurisprudence. Despite the Supreme Court's clear pronouncement in *Giles* that a statement must be made when the declarant's death was actually imminent to constitute a dying declaration at common law, the Ohio court of appeals failed to consider whether Chandler's death was looming at the time he identified Woods. *State v. Woods*, 2014-Ohio-3892, 2014 WL 4437733, at *3. In fact, the only factor the court considered was whether Chandler believed he was in danger of dying, a subject about which the evidence at trial was sharply divided. Id. In so doing, the court interpreted the dying declaration exception to confrontation to be co-terminous with the state evidentiary rule governing the dying declaration hearsay exception and relied heavily on prior state court decisions discussing the contours of the hearsay rule. Id. (citing *State v. Kennedy*, 2013-Ohio-4221, 998 N.E.2d 1189 (Ohio Ct. App. 2013).)  Ironically, the state court did not even once cite  *Giles*, the Court's leading authority on the subject, much less address its requirements for the common law confrontation exception. Id. The state court ruling therefore conflicts with direct precedent of the Supreme Court sufficient to warrant a writ of habeas corpus.

---

[1] The murder was a federal crime because committed within the exclusive territorial jurisdiction of the United States.  18 U.S.C. § 7.

(Reply, ECF No. 17, PageID 3976.)

But the Supreme Court in *Giles* did not "create a standard for what constitutes a dying declaration under Confrontation Clause jurisprudence." Rather, its discussion of the parameters of the dying declaration was limited to one paragraph

> We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. See *id. [Crawfrpd]*, at 56, n. 6, 62, 124 S. Ct. 1354, 158 L. Ed. 2d 177. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying. See, *e.g.*, *King* v. *Woodcock*, 1 Leach 500, 501-504, 168 Eng. Rep. 352, 353-354 (1789); *State* v. *Moody*, 3 N. C. 31 (Super. L. & Eq. 1798); *United States* v. *Veitch*, 28 F. Cas. 367, 367-368, 1 Cranch C.C. 115, F. Cas. No. 16614 (No. 16,614) (CC DC 1803); *King* v. *Commonwealth*, 4 Va. 78, 80-81 (Gen. Ct. 1817). Avie [the victim]did not make the unconfronted statements admitted at Giles' trial when she was dying, so her statements do not fall within this historic exception.

554 U.S. at 358-59. The balance of the opinion was devoted to discussing the defense-procured unavailability exception, at points contrasting it with the dying declaration exception.

> In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Williams*, 529 U.S. at 412.

*Goodell v. Williams*, 643 F.3d 490 (6th Cir. 2011). Because Justice Scalia's description of the dying declaration exception at common law is dicta, it cannot control here.

The First District had to decide both the constitutional claim and the Ohio evidentiary claim, to wit, that Chandler's "statement" did not come within the dying declaration rule as codified at Ohio R. Evid. 804(B)(2). Respondent argues, correctly, that this Court may not in a habeas corpus case review the correctness of the Ohio evidence law ruling (Return, ECF No. 11,

9

PageID 3909).  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Respondent then argues that "the law on admission of dying declarations under the Confrontation Clause is not clearly established in the Supreme Court. . . ."  (Return, ECF No. 11, PageID 3909).  Petitioner turns this argument on its head to claim that, if the Warden is correct, "the state court should not have created such an exception. . . ."  (Reply, ECF No. 17, PageID 3977).  On the contrary, the Supreme Court recognized the dying declaration as an exception to the Confrontation Clause already in *Crawford*.  It has just not as yet "constitutionalized" the parameters of that exception.  As the Sixth Circuit held in *Walker v. Harry*, 462 Fed. Appx. 543 (6th Cir. 2012), the Supreme Court has "refrained from ruling on the status of dying declarations under the Confrontation Clause." *Id.*  at 545.

Because there is no Supreme Court holding on the constitutional parameters of the dying declaration hearsay exception under the Confrontation Clause, the First District's decision is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.  Woods' First Ground for Relief should be dismissed on the merits.


**Ground Two:  Unconstitutional Pre-Trial Identification**


`      In his Second Ground for Relief, Woods argues his identification by Chandler occurred under suggestive circumstances and its admission at trial therefore violated his due process rights.

Woods included this claim as the second part of his First Assignment of Error on direct appeal and the First District decided it as follows:

> **[\*P23]**  Woods next argues that the trial court erred in overruling
> his motion to suppress the identification because the procedure

employed by the investigating officers was unduly suggestive.

**[\*P24]** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by some competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's judgment, whether the facts satisfy the applicable legal standard. *Id.*

**[\*P25]** To suppress identification testimony, the trial court must find that the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers,* 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Green,* 117 Ohio App.3d 644, 652, 691 N.E.2d 316 (1st Dist.1996). "Reliability is the linchpin in determining the admissibility of identification testimony * * *." *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Thus, even if the identification procedure was suggestive, so long as the challenged identification was reliable, it is admissible. *Id.*; *State v. Seay,* 1st Dist. Hamilton No. C-090233, 2010-Ohio-896, ¶ 29.

**[\*P26]** In this case, the trial court properly held that the identification was reliable. The state presented evidence that Chandler had known Woods for a long period of time and had repeatedly purchased drugs from Woods in the area where the shooting had occurred. And it was through Chandler's prompting that the investigating officers had brought the photograph of Woods to the hospital.

**[\*P27]** Nonetheless, Woods contends that the identification was subject to suppression in light of the investigating officers' alleged failure to comply with the identification procedures set forth in R.C. 2933.83. But as this court has held, an alleged violation of R.C. 2933.83 is not a proper basis for suppression, as the remedy for such a violation is cross-examination about the police procedures at trial. *State v. Cook,* 1st Dist. Hamilton No. C-130242, 2013-Ohio-5449, ¶ 33, citing *State v. Ruff,* 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 5; R.C. 2933.83(C)(1). Accordingly, the trial court did not err in admitting the identification, and we overrule the first assignment of error.

*State v. Woods, supra.*

In arguing this Ground for Relief in the Reply, Petitioner relies heavily on *Manson v. Brathwaite,* 432 U.S. 98 (1977), but accuses the First District of "fail[ing] to even cite *Manson*" and "relying instead on an Ohio statute that sets forth a procedure for police to follow in administering certain types of photo lineups." (Reply, ECF No. 17, PageID 3978.) With respect, that is a complete misreading of the First District's decision. It did cite *Manson* at ¶ 25, reproduced verbatim above, as the key Supreme Court decision. It did not rely on Ohio Revised Code § 2933.83 as a basis for affirmance, but rather rejected Woods' claim, made on his behalf by the same attorney who represents him in this habeas corpus proceeding, that failure of the police to conform to the statute was a basis for suppression. *State v. Woods, supra*, at ¶ 27.

Woods correctly states the factors a court must consider in determining whether to suppress a pre-trial identification as unreliable (Reply, ECF No. 17, PageID 3977). The Supreme Court held in *Neil v. Biggers*, 409 U.S. 188 (1972):

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)[2].

In upholding the identification, the First District noted that the admissibility of a pre-trial identification is a mixed question of law and fact. It found that the trial court had evidence

---

[2] Woods notes the evolving scientific literature on eyewitness perception and identification and the consequent revisions of identification standards in New Jersey and Oregon (Reply, ECF No. 17, PageID 3977, n. 3). After AEDPA, however, habeas courts do not fulfill the function apparently envisioned for them by the Supreme Court in *Fay v. Noia*, 372 U.S. 391 (1963), of elaborating constitutional standards set by the Court. Rather, we are limited to deciding whether state court decisions contravene what the Supreme Court has already decided.

before it from which it could properly have reached a reliability determination.[3]  While there was little time for Chandler to see Woods at the time of the shooting, there was evidence to support the finding that Chandler had purchased drugs from Woods in the area where the shooting occurred on a number of prior occasions.  Thus this was not a "stranger" crime where the likelihood of misidentification is much higher.  Woods emphasizes that five days that elapsed between the shooting and the identification, but that is a factor much more relevant in stranger crimes.  Finally, the First District noted that it was Chandler who suggested bringing a copy of Woods' photograph to the hospital for possible identification.

In applying *Neil* and *Manson*, a state court need not write at length.  Here the Petitioner has failed to show that the First District's conclusion on reliability of the identification was contrary to or an objectively unreasonable application of those two cases.  Ground Two should be dismissed on the merits.

**Ground Three: *Batson* Violations**

In his Third Ground for Relief, Woods asserts the trial court "incorrectly applied *Batson* [*v. Kentucky*, 476 U.S. 79 (1986)] by requiring Woods to demonstrate a pattern of race-based jury strikes before shifting the burden to the state to explain its use of peremptory challenges with a race-neutral explanation."  (Petition, ECF No. 1, PageID 9).

This claim was presented to the First District as Woods' Second Assignment of Error and decided as follows:

> **[*P28]**  In his second assignment of error, Woods argues that the state exercised peremptory challenges during voir dire in violation

---

[3] The trial court found the police procedure was suggestive and the First District implicitly assumed that finding was correct.

13

of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After the first peremptory challenge of a prospective African-American juror, the trial court stated that Woods had not yet established a pattern of discrimination. Woods argues that he was not required to establish a pattern of discrimination to trigger the state's burden to provide a race-neutral explanation for the challenge.

**[\*P29]**  In *Batson*, the court created a three-part test to determine if the state has used peremptory challenges in a discriminatory manner. The opponent of the challenge must first make a prima facie showing of discriminatory intent. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 61. If the trial court finds the first requirement fulfilled, the state must then provide a racially neutral explanation for the challenge. *Id*. Finally, the court must decide whether, under all of the circumstances, the opponent has demonstrated racial discrimination. *Id*. A trial court's finding that the opponent has failed to prove discriminatory intent will not be reversed unless it is clearly erroneous. *State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992), following *Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

**[\*P30]**  Woods is correct in his assertion that the opponent of a peremptory challenge is not required to demonstrate a pattern of discrimination. *State v. Walker*, 139 Ohio App.3d 52, 56, 742 N.E.2d 1173 (1st Dist.2000). As we have held, "[t]he exercise of even one peremptory challenge in a purposefully discriminatory manner is a violation of equal protection." *State v. Taylor*, 1st Dist. Hamilton No. C-020475, 2004-Ohio-1494, ¶ 20, citing *State v. Gowdy*, 88 Ohio St.3d 387, 2000 Ohio 355, 727 N.E.2d 579 (2000), and *Walker, supra.* Thus, the trial court did err in concluding that Woods was required to demonstrate a discriminatory pattern.

**[\*P31]**  But the court rectified its error by requiring the state to provide a race-neutral explanation for the first challenge after the state had exercised a second peremptory challenge of an African-American. *See State v. Tibbs*, 1st Dist. Hamilton No. C-100378, 2011-Ohio-6716, ¶ 24. Specifically, the state cited answers given by the first challenged juror suggesting that she would hold the state to a higher standard than required by law with respect to identification testimony. As for the second juror, the state noted that she had described herself as an honest person but then conceded that she had been convicted of an offense involving dishonesty. The trial court's acceptance of those explanations was not clearly erroneous. We overrule the second assignment of error.

14

*State v. Woods, supra.*

*Batson v. Kentucky*, 476 U.S. 79 (1986), prohibits race-based peremptory challenges by a prosecutor.  A trial court must use a three-step process to evaluate a *Batson* claim.  First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race.  The burden then shifts to the proponent to articulate a race-neutral reason for the challenge.  Finally, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination.  *Purkett v. Elem,* 514 U.S. 765 (1995); *Hernandez v. New York*, 500 U.S. 352 (1991).  To make a *prima facie* showing, a defendant must show that he is a member of a cognizable racial group, that a challenge has been exercised to remove a venireperson of the same race, and any additional facts and circumstances from which an inference could be drawn that the prosecutor had used the peremptory challenge in a race-based manner.  *Batson,* 476 U.S. at 79.  The defendant is entitled to rely on the fact that the peremptory challenge process is one in which those who are of a mind to discriminate on the basis of race are able to do so.  *Id.*  A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous.  *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990)  The fact that the evidence would have supported a challenge for cause is sufficient to demonstrate that it is race-neutral.  *Batson*, 479 U.S. at 97.  A *Batson* error is never harmless, but rather is a structural error.  *United States v. McFerron,* 163 F.3d 952 (6th Cir. 1998), relying on *Arizona v. Fulminante,* 499 U.S. 279 (1991).

The First District found the trial court erred in the process it used when the first peremptory challenge was made to an African-American venireperson, but that it corrected that error by requiring a race-neutral explanation as to both peremptorily-challenged African-

Americans when the second challenge occurred  *State v. Woods, supra*, at ¶¶ 30-31.

The prosecutor's first peremptory challenge was exercised as to Prospective Juror No. 7, Ms. Laury (Tr. Tr. ECF No. 10-26, PageID 1418).  Defense counsel Calaway immediately made a *Batson* challenge, stating "I know that he [the prosecutor] hasn't demonstrated a pattern, but the facts of this case are particularly significant because it's a white victim and African-American defendant and there's only three African-Americans in the veneer [sic], the rest are white."  The trial judge responded that

> Well, I think there has to have to be a pattern first. And I will cause the State to be mindful of Batson, which I know they are, I assume they will be.
>
> But, at this point in time I may require him to state a raise [sic] neutral reason, but there's no pattern yet. So I'm going to reserve that statement for later.

*Id.* at PageID 1418-19.  However, Ms. Laury was then excused.

The prosecutor next sought to exercise a peremptory challenge as to Prospective Juror Number 5, Ms. Gilbert. *Id.* at PageID 1528.  Ms. Calaway raised a *Batson* challenge and the trial court required a race-neutral explanation. *Id.*  Mr. Prem gave what is concededly a race-neutral explanation as to Ms. Gilbert and she was excused.  Then the prosecutor proceeded to give what purported to be a race-neutral explanation fort excusing Ms. Laury[4].  At the conclusion, the judge stated "I find that the State hasn't given a race-neutral explanation, so I'm gonna allow your *Batson* challenge, . . ." *Id.* at PageID 1533.

The Warden misreads the record in this regard, claiming the trial judge found a satisfactory race-neutral explanation had been given as to both jurors (Return, ECF No. 11, PageID 3918).  That reading of the record is flatly contradicted by the judge's finding just

---

[4] Although neither her name nor juror number is mentioned at this point in the transcript, it is clear from the context that the prosecutor is speaking about her.

quoted.

Woods complains that "after making this finding, the court permitted the juror to be excused anyway and engaged in no remedial efforts to correct the error or to ensure a racially-balanced jury." (Reply, ECF No. 17, PageID 3983, citing Tr. Tr. ECF No. 10-10, PageID 1533-34). Actually the record reflects the juror had been excused **before** this finding. After the first *Batson* challenge was made, Judge Myers excused Ms. Laury and asked her to go with the bailiff, saying her services would not be needed any more today. (Tr. Tr. ECF No. 10-16, PageID 1419).

Woods has not suggested what the trial judge should have done at that point to correct the *Batson* error. It might have been possible to find Ms. Laury and seat her as a juror. The record does not reflect whether venirepersons in Hamilton County, once they are excused from one jury, are returned to a jury pool from which they can be called to other courtrooms for possible service, which is the process in some urban counties in Ohio. The other possible cure would have been to declare a mistrial and start over with a new venire. As far as the record shows, neither the trial judge nor defense counsel considered either one of these possibilities. Just as he does here, Woods made no suggestion to the First District about what should have been done once Judge Myers sustained the *Batson* challenge to the peremptory excuse of Ms. Laury, stating that the only appropriate remedy for these errors is reversal (Appellant's Brief, Record, ECF No. 10, PageID 268.)

Assuming Ms. Laury could not have been recalled, the appropriate remedy after sustaining the *Batson* challenge would have been a to move for a new venire. Woods emphasizes that *Batson* error is structural error, but that error only infects the verdict when a person has been tried by a jury from which someone has been unconstitutionally excluded under

*Batson*.  There was time and opportunity to correct the *Batson* error before the jury was sworn, but Woods' counsel never moved for a new venire or any other sort of relief from the *Batson* error.

Under these circumstances, trying the case with a *Batson*-error-infected jury was invited error because defense counsel took no steps to prevent the trial from going forward.  A party cannot obtain federal habeas corpus relief from invited error.  *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002); *Fields v.Bagley*, 275 F.3d 478, 486 (6th Cir. 2001).

> "The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court . . . to commit." *Harvis v. Roadway Express Inc.*, 923 F.2d 59, 60-61 (6th Cir. 1991). This circuit has referred to the doctrine as "a cardinal rule of appellate review," and federal appellate courts have applied the doctrine to a "wide range of conduct." *Fryman v. Fed. Crop Ins. Corp*., 936 F.2d 244, 249 (6th Cir. 1991) (quoting *Harvis*, 923 F.2d at 60) (internal quotation marks omitted)).

*Bavelis v. Doukas (In re Bavelis),* 773 F.3d 148, 157 (6th Cir. 2014).

On this basis, Ground Three should be dismissed on the merits.

**Ground Four:  Erroneous Non-Disclosure of Witnesses**

In his Fourth Ground for Relief, Woods claims the trial court violated his due process rights by erroneously certifying that the State need not identify certain witnesses before trial. Woods presented this claim to the First District as his Third Assignment of Error and it was decided as follows:

> [*P32]  In his third assignment of error, Woods maintains that the trial court erred in certifying two state's witnesses for nondisclosure.

**[\*P33]**  Crim.R. 16 governs discovery in general and witness disclosure in particular. Crim.R. 16(I) states that "[e]ach party must provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." But under Crim.R. 16(D)(1), "[t]he prosecuting attorney shall certify to the court that the prosecuting attorney is not disclosing material" that is otherwise subject to disclosure if he "has reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness * * *."

**[\*P34]**  Among the reasons for nondisclosure, the prosecution may cite "the nature of the case, the specific course of conduct of one or more parties, [and] threats or prior instances of witness tampering or intimidation * * *." Crim.R. 16(D). The trial court may not reject the prosecuting attorney's certification for nondisclosure unless it finds that the prosecution has abused its discretion. Crim.R. 16(F). This court, in turn, reviews a trial court's decisions concerning discovery—including issues of witness disclosure—under an abuse-of-discretion standard. *State v. Williams*, 1st Dist. Hamilton No. C-130277, 2014-Ohio-1526, ¶ 14.

**[\*P35]**  In the case at bar, there was no abuse of discretion. With respect to one of the witnesses, the trial court conducted a hearing in which the state presented case-specific evidence that disclosure of the witness's identity would threaten his safety and the safety of his family and friends. This witness was in fact murdered before trial. And as the state correctly asserts, there was no showing that the witness in question would have provided exculpatory evidence or that Woods was otherwise prejudiced by the nondisclosure.

**[\*P36]**  The second witness subject to a nondisclosure order was Beard. The assistant prosecutor once again provided case-specific information that the witness feared for his safety, and the court ordered the state to provide Beard's identity to the defense no later than the commencement of trial, as provided in Crim.R. 16(F)(5). Woods has not demonstrated an abuse of discretion on the part of the prosecuting attorney or the trial court, and we overrule the third assignment of error.

*State v. Woods, supra.*

Respondent asserts there is no federal due process right to have state discovery rules

enforced (Return, ECF No. 11, PageID 3919).  Woods replies that there is indeed such a right, relying on *Wardius v. Oregon*, 412 U.S. 470 (1973).  The holding in *Wardius*, however, is much narrower than that.  In that case the Supreme Court held that enforcement of a notice of alibi rule against a defendant was unconstitutional in the absence of a reciprocal right to discover rebuttal witnesses from the State.

Albeit briefly, Woods presented this claim in part as a constitutional claim to the First District.  (Appellant's Brief, Record, ECF No. 10, PageID 269, citing *Wardius*).  Although the First District did not discuss *Wardius*, because the due process claim was fairly presented to it, it must be treated as having decided that claim.  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Ross v. Pineda*, 2013 U.S. App. LEXIS 25481 (6th Cir. 2013), quoting *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013)(emphasis added).  This Court therefore reviews the claim applying AEDPA deference.

Woods has not shown that the First District's decision of this claim was contrary to or an objectively unreasonable application of Supreme Court precedent.  The Supreme Court has never held that the State has a constitutional obligation in a criminal case to reveal the identity of its witnesses.  Ground Four should be dismissed with prejudice on the merits.

**Ground Five:  Unconstitutional Restriction on Defense Expert**

In his Fifth Ground for Relief, Woods asserts the trial court violated his due process rights by limiting the testimony of his eyewitness identification expert witness.  Woods presented this claim on direct appeal as his Fourth Assignment of Error and the First District decided it as follows:

**[\*P37]**  In his fourth assignment of error, Woods contends that the trial court erred in limiting the testimony of his expert witnesses. He first argues that the court erred in restricting the testimony of psychologist Dr. Dysart. Although Dr. Dysart was permitted to testify about the factors in this case that would have impeded Chandler's ability to identify his assailant, Woods argues that the court erred in precluding Dysart from rendering an opinion on the ultimate issue of Chandler's credibility.

**[\*P38]**  Evid.R. 704, along with Evid.R. 702, 402, and 403, generally permits the admission of expert testimony on an ultimate issue to be decided by the trier of fact. *See State v. Campbell*, 1st Dist. Hamilton Nos. C-010567 and C-010596, 2002 Ohio 1143, 2002 Ohio App. LEXIS 1158 (Mar. 15, 2002). And the expert testimony of an experimental psychologist concerning variables or factors that may impair the accuracy of a typical eyewitness identification is admissible under Evid.R. 702. *State v. Buell*, 22 Ohio St.3d 124, 22 Ohio B. 203, 489 N.E.2d 795 (1986), paragraph one of the syllabus. But testimony of such an expert regarding the credibility of a *particular* witness is inadmissible under Evid.R. 702, absent a showing that the witness suffers from a mental or physical impairment that would affect his ability to observe or recall events. *Id.* at paragraph two of the syllabus.

**[\*P39]**  Under *Buell*, we review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Id.* at 133. In addition, under Evid.R. 402, the trial court retains the discretion to exclude even relevant evidence if it would unduly waste time or confuse the issues. *Id.*

**[\*P40]**  In this case, we find no abuse of discretion. Although the evidence indicated that Chandler had been smoking crack cocaine on the night of the shooting, the state demonstrated that the effects of the drug would have dissipated by the time the gunman approached the car. There was also an indication in Chandler's medical chart that he had suffered from oxygen deprivation and its attendant effects on his mental functioning, but Jordan Bradley Bonomo, M.D., a neurointensivist who had treated Chandler, testified that the notation in the chart had been erroneous.

**[\*P41]**  Moreover, Dr. Dysart herself conceded that the statistical data she had compiled with respect to the factors affecting the reliability of identification in general could not be used to predict or assess the identification made by a particular witness. Thus, the trial court could have reasonably concluded that Dysart's opinion concerning Chandler's credibility would have confused the issues or misled the jury.

21

[*P42] Finally, the defense was permitted, through the testimony of Dr. Rorick and Dr. Abdullah, to adduce expert evidence about the credibility of Chandler's identification. Thus, the exclusion of similar evidence proffered by Dr. Dysart cannot be said to have resulted in material prejudice to Woods.

[*P43] Woods next argues that the trial court erred in rejecting the testimony of a law professor on the issue of jailhouse informant Beard's credibility. Woods proffered that the professor would have testified about the inherent deficiencies in the testimony of jailhouse informants in light of the widespread exchange of favorable testimony for reduced sentences.

[*P44] To be admissible, an expert opinion must first relate "to matters beyond the knowledge or experience possessed by laypersons" or dispel "a misconception common among laypersons * * *." *See State v. Garrett,* 1st Dist. Hamilton No. C-090592, 2010-Ohio-5431, ¶ 35. And, once again, a trial court's determination of admissibility under Evid.R. 702 will not be reversed absent an abuse of discretion. *Id.*

[*P45] In this case, we find no abuse of discretion. Woods was permitted to cross-examine Beard at length about jailhouse informants in general, about his previous cooperation with the police, and about his expectation that he would benefit from his testimony in this case. We are not persuaded that the proffered expert testimony would have further illuminated the subject for the jury, and we overrule the fourth assignment of error.

*State v. Woods, supra.*

Woods grounds his fifth claim for relief in *Ake v. Oklahoma,* 470 U.S. 68 (1985), *Chambers v. Mississippi,* 410 U.S. 284 (1973), and *Crane v. Kentucky*, 476 U.S. 683 (1986). *Ake* held that an indigent murder defendant was entitled to state-funded psychiatric witness assistance in preparing his defense; it did not hold that any particular type of expert testimony was constitutionally entitled to be presented. *Chambers*, of course, dealt with the common law rule about impeaching one's own witness (the so-called vouching rule), and not about experts at all. Neither did *Crane*.

The expert opinions which Woods wanted to present and which Judge Myers excluded were an ultimate opinion on whether Chandler's identification was reliable and national statistical data on eyewitness identifications on convictions later vacated. Woods has not shown that the Supreme Court has held an ultimate opinion by an expert on the credibility of a witness must be admitted.

In her Affidavit Dr. Dysart writes about the conclusion of Brandon Garrett that 75% of the first 250 DNA exonerations were for convictions where there was erroneous eyewitness identification (Record, ECF No. 10, PageID 188-89.) Professor Garrett's widely-known and respected study, published under the title CONVICTING THE INNOCENT, is very important and Dr. Dysart's Affidavit accurately reports part of his conclusions. But the fact that 75% of the first 250 DNA exonerations happened in case with eyewitness identification mistakes, if presented to a jury, would be likely to cause confusion because it says nothing about the likelihood of misidentification in this case. For example, many of the early DNA exonerations were for cross-racial stranger rape. For a jury to be told the 75% statistic without other data – e.g., the number of unreversed convictions with cross-racial eyewitness identification; the number of cases in which no DNA evidence is available for testing, the number of unreversed convictions with non-stranger eyewitness identification – would be confusing and likely to give rise to the cognitive error of "anchoring."

Woods also complains of the exclusion of his tendered expert on the subject of the reliability of jailhouse informants, law professor Christo Lassiter. As an area of expert testimony, thus subject is far less developed than that of the reliability of eyewitness identification testimony. Because it relates to the credibility of a witness which the law deems fully testable by cross-examination, it is arguably not a proper subject for expert testimony under

Rule 702.  Certainly there is no Supreme Court decision holding that such testimony must be admitted.

Because Woods has not shown any Supreme Court authority requiring as a matter of due process admission of evidence of the type excluded here, Ground Five should be dismissed on the merits.

**Ground Six:  Improper Admission of Jailhouse Witness Testimony**

In his Sixth Ground for Relief, Woods claims the trial court violated his Sixth and Fourteenth Amendment rights by admitting the testimony of a jailhouse informant about Woods' inculpatory statements to him.   Woods presented this claim on direct appeal as his Fifth Assignment of Error which the First District decided as follows:

> [*P46]  In his fifth assignment of error, Woods argues that the trial court erred in permitting Beard to testify about Woods's alleged confession to the offenses. Woods first maintains that Beard was acting as an agent of the state and that the admission of the confession violated Woods's right to counsel under the Sixth Amendment. See United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).
>
> [*P47]  We find no merit in this argument. At a hearing on this issue, the evidence indicated that, although Beard had worked with the police in the past, he was not acting on behalf of the state or at the state's direction when Woods made the statement about the shootings in this case.
>
> [*P48]  Woods next argues that the court erred in failing to hold a credibility hearing before Beard was permitted to testify. Again, this argument is without merit. Beard's credibility was for the jury to determine, and Woods was permitted to cross-examine him extensively about his involvement with the police and his expectation that he would benefit from testifying against Woods. Moreover, the jury was properly instructed to consider a witness's bias or interest in determining credibility. It was not incumbent on

the trial court to hold a separate hearing on the issue. See State v. Howard, 1st Dist. Hamilton No. C-100240, 2011-Ohio-2862, ¶ 46.

[*P49] Woods also contends that the trial court erred in restricting his cross-examination of Beard with respect to an alleged prior violent crime involving an elderly victim. But because the questioning involved only a charge against Beard, as opposed to a conviction, Woods can demonstrate no error. Evid.R. 609; State v. Rodriquez, 31 Ohio App.3d 174, 176, 31 Ohio B. 339, 509 N.E.2d 952 (9th Dist.1986). We overrule the fifth assignment of error.

*State v. Woods, supra.*

The Sixth Amendment portion of this claim depends on establishing that the informant, Jermaine Beard, was acting as an agent of the State when he elicited the inculpatory statements. The First District found that Judge Myers had held a hearing on that question and found that, although Beard had acted as a police agent in the past, he was not doing so when Woods gave the inculpatory statement. *Id.* at ¶ 47. Obviously, the credibility of the witnesses in that hearing was for Judge Myers to evaluate.

The balance of Woods' argument on this Ground for Relief cites a number of cases in which the courts and legal commentators have disparaged the credibility of jailhouse informants (Reply, ECF No. 3989). But Woods offers no authority for the proposition that a state court must hold a pretrial credibility hearing regarding an informant and exclude his testimony if the judge finds it incredible. Most informants are strongly impeachable with prior convictions and expected benefits from their testimony. But the Constitution does not impose a motion-to-suppress-like pretrial process on the States for considering jailhouse informants. Ground Six should be dismissed on the merits.

**Ground Seven: Exclusion of Chandler's Medical and Psychological Records**

In his Seventh Ground for Relief, Woods claims the trial court erred by excluding the

victim's medical and psychological records which would allegedly have shown his state of mind

at the time of the offense and when he later identified Woods.  Woods presented this claim to the

First District on direct appeal as his Sixth Assignment of Error which was decided as follows:

> **[\*P50]**  In his sixth assignment of error, Woods argues that the
> trial court erred in excluding from evidence portions of Chandler's
> medical and psychiatric records. Specifically, the court excluded
> records from 2004 indicating that Chandler had psychiatric
> disorders and a history of drug abuse. Woods sought to introduce
> the records to cast doubt on Chandler's ability to identify his
> assailant.

> **[\*P51]**  The decision to admit or exclude a victim's medical
> records will not be reversed absent an abuse of discretion. *See
> State v. Kidd*, 11th Dist. Portage No. 2006-P-0087, 2007-Ohio-
> 6562, ¶ 59. Here, the trial court did not abuse its discretion.
> Woods simply could not demonstrate a connection between
> Chandler's psychiatric condition in 2004 and his ability to identify
> his assailant in 2010. Thus, the trial court reasonably concluded
> that the evidence was not relevant under Evid.R. 401. We overrule
> the sixth assignment of error.

*State v. Woods, supra.*

The Warden asserts that this was simply a decision of state evidence law which is not

reviewable in habeas corpus (Return, ECF No. 11, PageID 3927-28).  Woods again relies on

*Chambers v. Mississippi, supra.*  As noted above, *Chambers* invalidated the exclusion of a

witness under the common law vouching rule which was still in effect in Mississippi when the

case was decided, although most jurisdictions had abandoned it and it was omitted from the

proposed Federal Rules of Evidence.  *Chambers* places no constitutional limit on the

enforcement of state relevancy rules by the exclusion of outdated medical records.  Ground

Seven should be dismissed on the merits.

**Ground Eight:  Ineffective Assistance of Trial Counsel**

In his Eighth Ground for Relief, Woods claims he received ineffective assistance of trial counsel in that his attorney (1) did not raise a *Weatherford v. Bursey* claim in suppression, (2) failed to present exculpatory evidence, and (3) failed to properly instruct Woods' expert on the facts of the crime.

Woods presented an ineffective assistance of trial counsel claim on direct appeal as his Seventh Assignment of Error which was decided as follows:

> **[*P52]**  In his seventh assignment of error, Woods maintains that he was deprived of the effective assistance of trial counsel. To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.
>
> **[*P53]**  In this case, we find no deficiency on the part of trial counsel. Woods first argues that counsel was deficient in failing to present the statement of the deceased witness discussed under the third assignment of error. But as the state correctly notes, that witness had identified the shooter as "Carlos" or "Los," which were two of Woods's nicknames. Thus, the statement of the witness would have bolstered the state's contention that Woods was the perpetrator. There was simply no deficiency in defense counsel's failure to pursue the issue.
>
> **[*P54]**  Woods next argues that counsel was derelict in failing to more diligently discredit the testimony of Beard. As we have already noted, counsel vigorously challenged both the admissibility and the credibility of Beard's testimony, and we can discern no lack of skill or diligence in counsel's handling of the issue.
>
> **[*P55]**  Woods also maintains that counsel failed to appropriately attack the credibility of Chandler's identification under R.C. 2933.83. Again, we find no merit to this claim. Counsel consistently attacked the identification procedure used by the officers, both by cross-examining the officers and by offering

expert testimony concerning the suggestiveness of the procedure. Woods's inability to obtain suppression of the identification as a result of the officers' alleged violation of the statute was not the result of counsel's deficiency; suppression was simply not an available remedy. *See Cook*, 1st Dist. Hamilton No. C-130242, 2013-Ohio-5449, and *Ruff, 1st Dist Hamilton No. C-110250, 2012-Ohio-1910*.

[*P56] Next, Woods argues that counsel was ineffective in the presentation of the testimony and report of Dr. Dysart. Specifically, he argues that counsel failed to pursue the issue of nonstranger identification. But Woods has not specifically identified what Dr. Dysart could have added to her testimony or report to further discredit Chandler's identification of Woods as his assailant and has therefore failed to demonstrate prejudice.

[*P57] Finally, Woods argues that counsel was ineffective in failing to object to instances of prosecutorial misconduct in closing argument. Specifically, he argues that his attorneys should have objected to the assistant prosecutor's argument that the investigating officers had not violated R.C. 2933.83. As we discuss under the ninth assignment of error, there was no prejudice resulting from the comments on the statutory procedures.

[*P58] In sum, we find no deficiency on the part of trial counsel, and we overrule the seventh assignment of error.

*State v. Woods, supra.*

The governing standard for ineffective assistance of counsel is found in *Strickland v.*

*Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

The First District cited *Strickland* as the governing law, as well as *State v. Bradley,* 42 Ohio St. 3d 136 (1989), in which the Ohio Supreme Court recognized Strickland as providing the standard.  Because the First District decided this ineffective assistance of trial counsel claim, the issue in habeas is whether its decision is an objectively unreasonable application of *Strickland*.

The sub-claims will be discussed separately.

**The *Weatherford* Sub-Claim**

Woods asserts his attorney "although aggressively attacking the testimony of jailhouse informant Jermaine Beard . .  failed to develop this claim under *Weatherford v. Bursey*, 429 U.S. 545 (1977), which is the prevailing Supreme Court authority on the use of government informants."  (Reply, ECF No. 17, PageID 3991).

Petitioner's argument on this claim is pure *ipse dixit*.  He fails to explain what a developed claim under *Weatherford* would have looked like[5].  No authority is offered for the proposition that developing a claim about a jailhouse informant without developing it "under *Weatherford*" was somehow deficient performance.  And no effort is made to show how a claim developed under *Weatherford* might have succeeded, so there is no showing of prejudice.

This sub-claim is without merit.


**Failure to Present the Supposed Exculpatory Evidence from the Deceased Witness**

This sub-claim is grounded in the failure to trial counsel to present evidence that an eyewitness to the shooting – a witness who was murdered before trial – would have identified the shooter as "Carlos" or "Los."  The First District found there was no prejudice here because those two names had been shown to be nicknames of Woods.  *State v. Woods, supra*, ¶ 53.

In his Reply, Woods makes no effort to undermine this finding of the First District.  If Woods' trial attorney knew that the evidence from the deceased witness, instead of undermining Chandler's identification, could in fact have bolstered it, it would have been deficient performance to present it.

---

[5] The litigant complaining of use of a government informant lost in *Weatherford*.

This sub-claim is also without merit.

## Failure to Oppose Motion in Limine

In his Reply, Woods claim his attorney performed deficiently in "fail[ing] to file a written response to the State's motion in limine to exclude the testimony of Woods' expert on jailhouse informants," Professor Lassiter.  (ECF No. 17, PageID 3992).  This sub-claim is forfeited by failing to plead it in the Petition (ECF No. 1-1, PageID 18).  A claim may not be added to a habeas proceeding by merely inserting it in argument in the reply.

## Failure to Use Ohio Revised Code § 2933.83 to Attack Chandler's Identification

This sub-claim also is not pleaded in the Petition and is forfeited for the same reason.

## Failure to Properly Instruct Dr. Dysart

Although this sub-claim is pleaded in the Petition, the Warden asserts it is procedurally defaulted because "it is not contained in any of the briefs filed in the state court. . . ."  (Return, ECF No. 11, PageID 3928.)  The Reply makes no response to this procedural default defense.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual

> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72 (1977). *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied*, 474 U.S. 831 (1985).

Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).

This sub-claim is barred by Woods' procedural default in failing to present it to the state courts.

**Failure to Object to Prosecutorial Misconduct**

In his Reply, Woods asserts his attorney failed to object to prosecutorial misconduct in closing argument (ECF No. 17, PageID 3992). This sub-claim is also forfeited by failing to plead it in the Petition.

Petitioner's claims of ineffective assistance of trial counsel being either forfeited, defaulted, or without merit, his Eighth Ground for Relief should be dismissed.

**Ground Nine:  Improper Jury Instructions**

In his Ninth Ground for Relief, Woods asserts trial court error in instructing the jury in two respects:  (1) permitting an inference of guilt from Woods' flight without sufficient evidence of his motive, and (2) failing to instruct the jury on Ohio's identification statute.  Woods presented these claims to the First District on direct appeal and they were decided as follows:

> **[\*P59]**  In his eighth assignment of error, Woods argues that the court erred in instructing the jury. He first argues that the court improperly instructed the jury on the issue of flight.
>
> **[\*P60]**  *HN13* An instruction on flight as it relates to a defendant's consciousness of guilt is proper if there is sufficient evidence of escape or some affirmative attempt to avoid apprehension. *State v. Robinson*, 1st Dist. Hamilton No. C-

060434, 2007-Ohio-2388, ¶ 19, citing *State v. Brundage*, 1st Dist. Hamilton No. C-030632, 2004-Ohio-6436, ¶ 17. A trial court's decision to instruct the jury on flight will not be reversed absent an abuse of discretion. *Robinson* at ¶ 19, citing *Brundage* at ¶ 18.

**[*P61]** Here, we find no abuse of discretion. The state presented evidence that Woods had been a long-time resident of Cincinnati and in particular of the area in which the shooting had occurred. In light of his capture several months later in the vicinity of Cleveland, we cannot say that the instruction on flight was arbitrary, unreasonable, or unconscionable.

**[*P62]** Woods also contends that the court erred in failing to instruct the jury on the state's alleged failure to comply with the identification guidelines contained in R.C. 2933.83. R.C. 2933.83(C) states that:

> When evidence of a failure to comply with any of the provisions of this section, or with any procedure for conducting lineups that has been adopted by a law enforcement agency or criminal justice agency pursuant to division (B) of this section and that conforms to any provision of divisions (B)(1) to (5) of this section, is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup.

We first reiterate that this was not a situation in which the victim was attempting to identify an unknown assailant from a lineup; the state presented evidence that Chandler had bought drugs from Woods on numerous occasions and that Chandler had prompted the investigation of Woods when he informed Richard Tucker that he could identify the perpetrator. Thus, the single-photo procedure did not result in the likelihood of misidentification. *See State v. Johnson*, 1st Dist. Hamilton No. C-090413, 2010-Ohio-3861, ¶ 24.

**[*P63]** Moreover, the trial court instructed the jury in this case that a single-photograph presentation "is generally considered suggestive." Accordingly, even though the court did not identify the statute by its Revised Code section, the jury was instructed that the procedures used by the officers could be considered in determining the reliability of the identification. We find no error in the instructions, and we overrule the eighth assignment of error.

*State v. Woods, supra.*

Both parties agree the relevant Supreme Court decisions are *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and *Cupp v. Naughten*, 414 U.S. 141 (1973)(Cited at Return, ECF No. 11, PageID 3931; Reply, ECF No. 17, PageID 3993). Additionally, alleged errors in jury instructions normally do not rise to the level of federal constitutional violations. See *Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose*, 527 F.2d 524 (6th Cir. 1975). When the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

The complained-of flight instruction was "Testimony has been admitted indicating that the defendant left Hamilton County. You are instructed that this alone does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt." (Reply, ECF No. 17, PageID 3993, quoting Tr. Tr. at PageID 3790). Woods complains this instruction was given *sua sponte*. *Id.* However, a trial judge has a duty to instruct the jury on the law it needs to decide the case which is independent of whether counsel request a particular instruction. Woods does not dispute the First District's recounting of the evidence that Woods was a long-term resident of Cincinnati "and in particular of the area where the shooting occurred" and that he was captured several months after the shooting in Lorain County, which is near Cleveland. The instruction was balanced, telling the jury not to give presumptive weight to the flight.

Woods also claims "[t]he trial court committed reversible error by failing to instruct the

jury regarding the deficiencies in the Chandler identification procedure," to wit, that the police did not comply with Ohio Revised Code § 2933.83 (Reply, ECF No. 17, PageID 3993).

In arguing this claim in the Reply, Woods emphasizes the mandatory language in the statute providing that an instruction on noncompliance shall be given when there is evidence of noncompliance (ECF No. 17, PageID 3993). Instead of literal compliance, the First District found there had been substantial compliance. *State v. Woods, supra*, at ¶ 63. But whether the trial judge complied with Ohio law is plainly a question of state law, not reviewable in habeas. This Court cannot properly constitutionalize Ohio Revised Code § 2933.83 by reversing a conviction upon a finding of noncompliance. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).

Ground Nine should therefore be dismissed.


**Ground Ten: Prosecutorial Misconduct**


In his Tenth Ground for Relief, Woods claims that misconduct by the prosecutor deprived him of a fair trial. He raised prosecutorial misconduct as his Ninth Assignment of Error on direct appeal and the First District decided it as follows:

> **[*P64]** In his ninth assignment of error, Woods contends that he was deprived of a fair trial by prosecutorial misconduct. *HN15* The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn*, 1st Dist. Hamilton No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 14 Ohio B. 317, 470 N.E.2d 883 (1984), and *State v. Canyon*, 1st Dist. Hamilton Nos. C-070729, C-070730 and C-070731, 2009-Ohio-1263, ¶ 17.

**[\*P65]**  Woods first argues that, during closing argument, the assistant prosecutor improperly alluded to portions of Spears's prior statement to police after the trial court had excluded those portions from evidence. The issue surrounding the prior statement was the extent to which Chandler had known Woods before the night of the shooting.

**[\*P66]**  We find no impropriety. The prosecutor made reference to the excluded portions only in response to defense counsel's playing of a portion of the statement in which Spears failed to mention Chandler's relationship with Woods. The state's reference to the statement was thus merely intended to rebut the implication that Spears had fabricated his testimony about the relationship. Moreover, because the trial court instructed the jury to consider only those items that had been admitted into evidence, we cannot say that Woods was prejudiced by the state's comments. *See generally State v. Ruff*, 1st Dist. Hamilton No. C-120844, 2013-Ohio-5892, ¶ 16.

**[\*P67]**  Woods next argues that the assistant prosecutor improperly informed the jury that the investigating officers had not violated R.C. 2933.83 by using a single-photograph identification procedure. Once again, we find no prejudice in the comments. As we have already held, the trial court properly instructed the jury about the identification procedure, and we must presume that the jury followed those instructions. *Id*. Accordingly, we overrule the ninth assignment of error.

*State v. Woods, supra.*

The Sixth Circuit has articulated the relevant standard for habeas claims of prosecutorial

misconduct:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (citation omitted).  Even if the prosecutor's conduct was improper or even "universally condemned," *id*., we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.  Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant:  (1) the likelihood that the remarks would mislead the jury or prejudice the accused,

> (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); see also *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005), *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008). The standard for habeas relief for prosecutorial misconduct thus parallels that for jury instruction error: the misconduct must be sufficiently egregious so as to deny a defendant a fair trial.

Woods' first claim of misconduct in the Petition is that the prosecutor lied to the court regarding the safety of a witness who was already deceased and therefore not in need of further protection by nondisclosure of his identity (Petition, ECF No. 1-1, PageID 18). This claim is procedurally defaulted because Woods did not raise it on direct appeal. Moreover, there is no showing that this somehow denied Woods a fair trial.

Woods' second claim of misconduct in the Petition is that the prosecutor commented to the jury that "Woods' compliance with an evidentiary ruling [was] evidence of guilt." *Id.* . The First District properly found there was no prosecutorial misconduct here because the prosecutor was responding to an implication made by defense counsel. *State v. Woods, supra,* at ¶¶ 65-66.

Woods' last claim of prosecutorial misconduct is that the prosecutor improperly bolstered the reliability of Chandler's identification of Woods "by suggesting he knew Woods." (Reply, ECF No. 17, PageID 3995). As it was raised and dealt with by the First District (¶ 67), this was

a charge of misconduct by implying Ohio Revised Code § 2933.83 does not apply to non-stranger identification.  The First District held there was no prejudice because the jury was properly instructed about identification procedure.  As it is argued in the Reply, the claim is without merit because there was evidence Chandler knew Woods.

Ground Ten should therefore be dismissed.


**Ground Eleven:  Insufficient Evidence to Support Conviction**


As pleaded in the Petition, the Eleventh Ground for Relief raises claims that the convictions were both against the manifest weight of the evidence and supported by insufficient evidence (Petition, ECF No. 1-1, PageID 18.)  As correctly pointed out by the Warden, a manifest weight claim is not cognizable in habeas corpus.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  Woods argues only the insufficient evidence claim in his Reply (ECF No. 17, PageID 3995-96).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable

inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law

which determines the elements of offenses; but once the state has adopted the elements, it must

then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency

challenge should be assessed against the elements of the crime, not against the elements set forth

in an erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193

L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the
> evidence, re-evaluate the credibility of witnesses, or substitute our
> judgment for that of the jury. See United States v. Hilliard, 11 F.3d
> 618, 620 (6th Cir. 1993). Thus, even though we might have not
> voted to convict a defendant had we participated in jury
> deliberations, we must uphold the jury verdict if any rational trier
> of fact could have found the defendant guilty after resolving all
> disputes in favor of the prosecution. Second, even were we to
> conclude that a rational trier of fact could not have found a
> petitioner guilty beyond a reasonable doubt, on habeas review, we
> must still defer to the state appellate court's sufficiency
> determination as long as it is not unreasonable. See 28 U.S.C. §
> 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under Jackson v. Virginia and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir.

2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a

conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,*

595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that Jackson claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> Cavazos v. Smith, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (per curiam). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews,* 567 U.S. 37,

43 (2012) (per curiam).

Woods raised a combined manifest weight and sufficiency claim as his Tenth Assignment

of Error on direct appeal and it was decided as follows:

> **[\*P68]** In his tenth assignment of error, Woods argues that his
> convictions were based on insufficient evidence and were against
> the manifest weight of the evidence.

> **[\*P69]** In reviewing the sufficiency of the evidence to support a
> conviction, the relevant inquiry for the appellate court "is whether,
> after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992). To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997).

[*P70] R.C. 2903.02(B), governing murder, states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The underlying felony in this case was felonious assault under R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." For the attempted shooting of Smith and Spears, Woods was convicted of felonious assault under R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

[*P71] In this case, the convictions were in accordance with the evidence. Chandler identified Woods as the person who had fired multiple shots into the car and who had inflicted the injury that ultimately proved to be fatal. Beard's testimony corroborated Chandler's identification. The number of shots fired into the car—and in particular those fired into the rear window—indicated that Woods had attempted to harm all of the car's occupants. Finally, it was undisputed that Woods was under a legal disability at the time of the offenses. We cannot say that the jury or the trial court created a manifest miscarriage of justice in finding Woods guilty, and we overrule the tenth assignment of error.

*State v. Woods, supra.*

Woods' argument in the Reply emphasizes the weakness of the evidence against him (ECF No. 17, PageID 3995-96).  But the test is not strength, but sufficiency.  Chandler identified Woods and Beard testified to Woods' admissions.  The jury heard and obviously believed that testimony.  It also heard corroborative circumstantial evidence:  Chandler was a drug user who

had purchased from Woods in the same vicinity on more than one occasion.  And Woods left Cincinnati for Cleveland after the shooting.  There is apparently no doubt that Chandler died of gunshot wounds inflicted in the same shooting in which the other victims.  There is likewise no challenge to the finding that Woods was under a disability at the time of the shooting.

In sum, the conclusion of the First District that Woods' conviction is supported by sufficient evidence is not an unreasonable application of *Jackson*.  Ground Eleven should be dismissed on the merits

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Reasonable jurists could disagree with this conclusion as it relates to Grounds One and Three such that Woods should be granted a certificate of appealablity on those grounds if he appeals.  Because reasonable jurists would not disagree with the above conclusions on the other Grounds for Relief, Petitioner should be denied a certificate of appealability on those Grounds.

July 14, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).