# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Ricardo Woods,

       Petitioner,

                                         Case No. 1:16-cv-643

    v.

                                         Judge Michael R. Barrett

Terry A. Tibbals, Warden,
Allen Oakwood Correctional
Institution,

       Respondent.

## OPINION & ORDER

This matter is before the Court on the Magistrate Judge's July 14, 2017 Report and Recommendation ("R&R") and August 15, 2017 Supplemental R&R recommending that Petitioner's Petition be dismissed with prejudice. (Docs. 19, 22).

The parties were given proper notice under Rule 72(b) of the Federal Rules of Civil Procedure, including notice that the parties would waive further appeal if they failed to file objections to the R&R in a timely manner. *See United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981). Petitioner filed Objections to the R&R (Doc. 20) and the Supplemental R&R (Doc. 25). Respondent has not filed a response to those Objections.

In the Supplemental R&R, the Magistrate Judge noted that as to the recommendation denying claims Two, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven, Petitioner has only filed general objections. Specifically, Petitioner states "[t]his objection is made to preserve the record and to avoid waiver of arguments for possible appeal." (Doc. 20, PAGEID # 4175).

"[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 Fed.Appx. 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

However, in Petitioner's objections to the Magistrate Judge's Supplemental R&R, Petitioner does address the Magistrate Judge's recommendations denying claims Two, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven by repeating the arguments made in his Reply. (Doc. 25, PAGEID # 4274). The Court questions whether this is a proper objection, but will nevertheless address the Magistrate Judge's recommendation denying claims Two, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven.

For the reasons stated below, the Court SUSTAINS Petitioner's objections as to Ground Three, but OVERRULES Petitioner's remaining objections to the Magistrate Judge's July 14, 2017 R&R and August 15, 2017 Supplemental R&R.

## I. <u>BACKGROUND</u>

The factual and procedural history of this case is described in the Magistrate Judge's July 14, 2017 R&R. (Doc. 19, PAGEID #4126-4130). The same will not be repeated here except to the extent necessary to address Petitioner's objections.

This matter arises out of Petitioner's habeas action brought pursuant to 28 U.S.C. § 2254 to obtain relief from his convictions in the Hamilton County Common Pleas Court on charges of purposeful murder, felony murder and felonious assault, all

with a firearm specifications, and two counts of possessing a weapon while under disability.

Petitioner has set forth eleven grounds for relief in his Petition. The Magistrate Judge recommends denying relief on all eleven grounds and dismissing the Petition with prejudice.

## II.  ANALYSIS

### A.  Standard of Review

This Court shall consider objections to a magistrate judge's order on a nondispositive matter and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  Fed.R.Civ.P. 72(a). When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended decision; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*; *see also* 28 U.S.C. § 636(b)(1).

### B.  Ground One: Dying declaration

In Ground One, Petitioner claims that the trial court violated his rights under the Confrontation Clause by admitting an identification of him made by the murder victim, David Chandler.  At the time of the identification, Chandler was paralyzed and on a ventilator.  The police asked Chandler to blink on the letter of the alphabet which corresponded with the shooter's first name.  (Doc.10-8, PAGEID #560-61).  The police then showed Chandler a photo of Petitioner and asked if he was the shooter.  (Doc. 10-

8, PAGEID #563-64).  According to the police, Chandler blinked three times for "yes."
(Doc. 10-8, PAGEID #564).

The Magistrate Judge explained that Petitioner presented this constitutional claim on direct appeal.  Therefore, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, only permits habeas relief if the state court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Magistrate Judge explained that there is no Supreme Court holding on the parameters of the dying declaration exception to the Confrontation Clause.  The Magistrate Judge discussed *Giles v. California*, 554 U.S. 353 (2008), cited by Petitioner, and concluded that the Supreme Court's discussion of the dying declaration exception in that case was *dicta.*

The United States Supreme Court has not expressly recognized that dying declarations are an exception to the Sixth Amendment's confrontation right.  The Supreme Court has explained:

> in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, [ ] we first suggested that dying declarations, even if testimonial, might be admissible as a historical exception to the Confrontation Clause.  *Id.*, at 56, n. 6, 124 S.Ct. 1354; *see also Giles v. California*, 554 U.S. 353, 358– 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008).  We noted in *Crawford* that we "need not decide in this case whether the Sixth Amendment

incorporates an exception for testimonial dying declarations." 541 U.S., at 56, n. 6, 124 S.Ct. 1354. Because of the State's failure to preserve its argument with regard to dying declarations, we similarly need not decide that question here.

*Michigan v. Bryant*, 562 U.S. 344, 351, n.1, 131 S. Ct. 1143, 1151, 179 L. Ed. 2d 93 (2011); *see also Walker v. Harry*, 462 Fed.Appx. 543, 545-46 (6th Cir. Feb. 13, 2012) (explaining that "[i]n *Crawford* and again in *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), the Supreme Court hinted that dying declarations may fall within an exception to the constitutional bar against testimonial hearsay.").

Because the Supreme Court has yet to rule on the status of dying declarations under the Confrontation Clause, the Court finds no error in the Magistrate Judge's conclusion that Petitioner's claim is not cognizable on federal habeas review.

### C. **Ground Two: Pre-trial identification**

In Ground Two, Petitioner argues that Chandler's identification of him occurred under suggestive circumstances and its admission at trial violated his due process rights. The Magistrate Judge explained that Petitioner raised this claim on direct appeal. The Magistrate Judge concluded that the First District Court of Appeal's conclusion on reliability of the identification was not contrary to or an objectively unreasonable application of federal law.

As the Supreme Court has explained:

We have explained that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review.

*Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

*Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010). Here, the Magistrate Judge explained the First District noted that there was evidence that Chandler had purchased drugs from Woods in the area where the shooting occurred on a number of prior occasions; and it was Chandler who suggested bringing a photo of Woods to the hospital for possible identification. The Court finds no error in the Magistrate Judge's conclusion that Ground Two should be dismissed on the merits.

### D. **Ground Three: *Batson* violation**

In Ground Three, Petitioner argues that the trial court incorrectly applied *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Specifically, Petitioner argues that the trial court required Petitioner to demonstrate a pattern of race-based jury strikes before shifting the burden to the state to explain its use of peremptory challenges with a race-neutral explanation.[1] The Magistrate Judge noted that as part of

---

[1]The trial transcript shows the following discussion of the *Batson* issue when the first challenge was made:

> THE COURT: . . . Mr. Prem, would you like to exercise a peremptory challenge?
>
> MR. PREM: Yes, Your Honor. At this time we ask the Court to excuse and thank Juror Number 7, Ms. Laury.
>
> MS. CALAWAY: Sorry, but I'm going to make a Batson challenge. I know that he hasn't demonstrated a pattern, but the facts of this case are particularly significant because it's a white victim and African-American defendant, and there's only three African-Americans in the veneer [sic], the rest are white. And so I think he should have to raise a neutral reason for striking the juror.
>
> THE COURT: Well, I think there has to have to be a pattern first. And I will cause [sic] the State to be mindful of Batson, which I know they are, I assume they will be. But, at this point in time I may require him to state a raise neutral reason, but there's no pattern yet. So I'm going to reserve that statement for later.

Petitioner's direct appeal, the First District Court of Appeals found that the trial court erred because the opponent of a peremptory challenge is not required to demonstrate a pattern of discrimination. However, the First District found that the trial court rectified the error by requiring the state to provide a race-neutral explanation for the first challenge after the state exercised a second peremptory challenge of an African-American. *See State v. Woods*, 2014 WL 44377332014, *5 (Ohio Ct. App. Sept. 10, 2014).

After reviewing the transcripts in the record, the Magistrate Judge noted that while the trial court may have corrected the error as to the second juror, the trial court never found a satisfactory race-neutral explanation as to the first juror. Instead, the first juror – Juror Number 7, Ms. Laury – was excused.[2] The Magistrate Judge explained that assuming juror Ms. Laury could not have been recalled, the appropriate remedy after sustaining the *Batson* challenge would have been to move for a new venire. The

_____

(Doc. 10-26, PAGEID #1418-1419). Juror Number 7 was then excused. (Doc. 10-26, PAGEID #1419).

[2]The record is somewhat difficult to read on this point. The second Batson challenge arose when the prosecutor used a peremptory challenge to strike Juror Number 5, Ms. Gilbert. (Doc. 10-26, PAGEID #1527-1528). The prosecutor then provided a race-neutral reason for striking Ms. Gilbert, which the court accepted. (Doc. 10-26, PAGEID #1531). According to the transcript, the court then stated, "I'll have you move just to make your record as well." The prosecutor then began discussing the race-neutral reasons for striking Ms. Laury. (Doc. 10-26, PAGEID #1531). Ms. Laury was not identified in the discussion, but the prosecutor referred to her as being "in quality assurance." Earlier in the jury selection process, Ms. Laury stated that her work was "quality assurance for a bank." (Doc. 10-25, PAGEID #1239-1240). After the prosecutor's explanation, the court stated:

> All right. I find that the State hasn't given a race-neutral explanation, so I'm gonna allow your Batson challenge, except assuming the next juror is not subject to a cause challenge, this will be our panel, and I'm gonna seat two alternates. Okay.

> What I just said is totally inaccurate. You get one peremptory remaining.

(Doc. 10-26, PAGEID #1533). The court then excused Ms. Gilbert. (Doc. 10-26, PAGEID #1533).

Magistrate Judge pointed out that counsel never moved for a new venire or any other sort of relief from the *Batson* error. The Magistrate Judge concluded that under these circumstances, trying a case with a *Batson*-error-infected jury was invited error because counsel did not take steps to prevent the trial from going forward. The Magistrate Judge explained that a party cannot obtain federal habeas relief from invited error.

Petitioner objected to this conclusion, arguing that the existence of an unmitigated *Batson* violation requires that the conviction be vacated. In making this objection, Petitioner relied upon the Sixth Circuit's decision in *Drain v. Woods,* 595 F. App'x 558 (6th Cir. 2014). The Sixth Circuit explained the *Batson* issue in *Drain* as follows:

> The *Batson* issue in Petitioner's case arises in an unusual posture for appellate and habeas review: the trial court in fact found that the prosecutor violated *Batson*. However, as every judge to reach the issue in this case has determined, the court then entirely failed to cure the violation and allowed Petitioner to be convicted by a jury selected in violation of *Batson*. The trial court raised the *Batson* issue *sua sponte* after the prosecutor used seven of her peremptory strikes to eliminate minority venire persons from the jury. The prosecutor then offered race-neutral reasons for each of the strikes. The trial court considered and rejected the prosecutor's explanations, announcing that it found the prosecutor had excluded black jurors based on their race. At no point did defense counsel join in the court's *Batson* challenge or offer argument against the prosecutor's alleged race-neutral reasons. Despite finding that the prosecutor's strikes were racially motivated, the trial court failed to cure the *Batson* violations that had already occurred, requiring only that the prosecutor approach the court for permission before striking any more African American or minority venire persons. Petitioner's counsel remained silent, failing to raise any objection to this plainly inadequate remedy.

595 F. App'x at 560-61. The Sixth Circuit first decided that it would not raise the procedural default issue *sua sponte*, and would instead review the *Batson* claim and

related ineffective assistance claim on the merits under the AEDPA. *Id.* at 567. The

Sixth Circuit set forth the proper legal analysis of the *Batson* claim:

> Courts conduct a three-step analysis to determine whether a *Batson* violation has occurred, the first step of which asks whether the defendant has made "a prima facie showing that a peremptory challenge has been exercised on the basis of race." *Miller–El v. Cockrell*, 537 U.S. 322, 328, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citing *Batson*, 476 U.S. at 96-97, 106 S.Ct. 1712). If that step is met, under step two, "the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation" for the strike. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). If such a race-neutral explanation is provided, a court determines under step three "whether the defendant has shown purposeful discrimination." *Cockrell*, 537 U.S. at 328-29, 123 S.Ct. 1029.

*Id.* at 568. Under this analysis, the Sixth Circuit found that the first step was met based

on Supreme Court decisions which held that "[o]nce a prosecutor has offered a race-

neutral explanation for the peremptory challenges and the trial court has ruled on the

ultimate question of intentional discrimination, the preliminary issue of whether the

defendant had made a prima facie showing becomes moot." *Id.* at 570 (citing

*Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).

However, the Sixth Circuit went on to explain that even setting aside the mootness

argument, under *Batson*: "[A] 'pattern' of strikes against black jurors included in the

particular venire" can, if present, "give rise to an inference of discrimination" establishing

a prima facie case." *Id.* (quoting *Batson*, 476 U.S at 97). The Sixth Circuit held that the

record showed there was a pattern of strikes in the record to give rise to an inference of

discrimination and satisfy the *prima facie* requirement. *Id.* at 571. The Sixth Circuit

then noted that at step two, the prosecutor was given the opportunity to provide her

race-neutral explanations for each of the challenged peremptory strikes; and at step

three the trial court found that the reasons offered by the prosecutor were not credible

and legitimate. *Id.* The Sixth Circuit determined the trial court was correct, and the appellate court's determination that no *Batson* violation occurred was unreasonable or contrary to clearly established federal law. *Id.* at 574. However, the Sixth Circuit explained that even though the trial court was correct in determining that the prosecutor violated *Batson*, "the trial court committed constitutional error when it failed to remedy the acknowledged *Batson* violations and allowed Petitioner to be tried by a jury that had been selected by racially impermissible means." *Id.* at 580. The Sixth Circuit explained: "[b]ecause the Michigan Court of Appeals did not reach the issue of remedy, concluding as it did that no *Batson* violation occurred, we do not apply AEDPA deference to this issue." *Id.*

The Sixth Circuit explained that once a *Batson* violation has been found, it must be remedied. *Id.* The Sixth Circuit outlined the two primary remedies for a *Batson* violation: (1) disallowing the improper strike; and (2) discharging the entire venire and starting anew. *Id.* (citing *Rice v. White*, 660 F.3d 242, 259 (6th Cir. 2011)). The Sixth Circuit explained that the trial court implemented neither of these remedies, and instead required the prosecutor to request permission from the court before using any more peremptory challenges against black jurors. *Id.* at 581. The Sixth Circuit found this remedy inadequate, and explained that "if stricken veniremembers are dismissed and later found to be part of a pattern of discriminatory strikes, the only remaining remedy for the *Batson* violation would be to discharge the entire venire and start the process anew." *Id.* (quoting *People v. Knight*, 473 Mich. 324, 701 N.W.2d 715, 729 (2005)). As a result, the Sixth Circuit concluded that the district court was correct in awarding a conditional writ of habeas corpus because "[i]n the absence of any remedial action

undertaken by the trial court, the existence of an unmitigated *Batson* violation requires that the conviction be vacated." *Id.* (quoting Rice, 660 F.3d at 260).

Petitioner argues that based on the holding in *Drain*, the trial judge should have dismissed the venire.

In his Supplemental R&R, the Magistrate Judge acknowledged this holding in *Drain*, but explained that Petitioner did not raise this claim in his Petition, or on direct appeal. The Magistrate Judge explained that the only issue Petitioner raised was that "*Batson* does not require a pattern of discrimination to set forth a prima facie case or to require a race-neutral explanation from the state." The Magistrate Judge noted that Petitioner did not claim that the trial court judge was constitutionally required to *sua sponte* dismiss the venire. Therefore, according to the Magistrate Judge, Petitioner's *Batson* claim was procedurally defaulted.

However, this Court reads the record differently. Petitioner's state court appellate brief states:

> The appropriate remedy for these errors is reversal. As this Court held in *Walker*, the trial court's failure to require a race-neutral justification for racially discriminatory peremptory strikes in the absence of a pattern of race-based decisions constitutes structural error. *Walker*, 139 Ohio App.3d at 57-58; T.p. 1070; *see also White*, 85 Ohio St.3d at 436. The fact that the trial court subsequently inquired into the prosecutor's reasons for exercising its first strike against an African-American juror is insufficient. T.p. 1084. At that point, the juror had already been excused. T.p. 1070. Moreover, the trial court found the state's race-neutral reason lacking and sustained the *Batson* challenge, but failed to remedy the violation by recalling the juror. T.p. 1085. As in Walker, Woods' convictions must be reversed.

(Doc. 10, PAGEID # 268). It is clear from this argument in the brief that Petitioner claimed there was a *Batson* violation and that the trial court failed to remedy the violation by "recalling the juror." Even though Petitioner now espouses a different

remedy – discharging the entire venire – it makes no difference. If a court determines that a *Batson* violation occurred at trial, "the only issue that remains is the appropriate remedy." *Rice v. White*, 660 F.3d 242, 259 (6th Cir. 2011). Here, the First District Court of Appeals concluded a *Batson* violation had occurred, but concluded that the violation had been cured when the trial court required the state to provide a race-neutral explanation for the first challenge after the state had exercised a second peremptory challenge of an African American.[3] *State v. Woods*, 2014 WL 44377332014, *5 (Ohio Ct. App. Sept. 10, 2014). The First District concluded that trial court's acceptance of those explanations was not clearly erroneous. *Id.* However, as the Magistrate Judge explained, the record shows that the trial court did not accept the explanations the prosecutor provided for the first challenge. The Court finds the First District's finding

---

[3]After citing the three-part *Batson* test, the First District Court of Appeals ruled as follows:

> Woods is correct in his assertion that the opponent of a peremptory challenge is not required to demonstrate a pattern of discrimination. *State v. Walker*, 139 Ohio App.3d 52, 56, 742 N.E.2d 1173 (1st Dist. 2000). As we have held, "[t]he exercise of even one peremptory challenge in a purposefully discriminatory manner is a violation of equal protection." *State v. Taylor*, 1st Dist. Hamilton No. C–020475, 2004–Ohio–1494, ¶ 20, citing *State v. Gowdy*, 88 Ohio St.3d 387, 727 N.E.2d 579 (2000), and *Walker*, *supra.* Thus, the trial court did err in concluding that Woods was required to demonstrate a discriminatory pattern.

> But the court rectified its error by requiring the state to provide a race-neutral explanation for the first challenge after the state had exercised a second peremptory challenge of an African–American. *See State v. Tibbs*, 1st Dist. Hamilton No. C–100378, 2011–Ohio–6716, ¶ 24. Specifically, the state cited answers given by the first challenged juror suggesting that she would hold the state to a higher standard than required by law with respect to identification testimony. As for the second juror, the state noted that she had described herself as an honest person but then conceded that she had been convicted of an offense involving dishonesty. The trial court's acceptance of those explanations was not clearly erroneous. We overrule the second assignment of error.

*State v. Woods*, 2014 WL 44377332014, *5 (Ohio Ct. App. Sept. 10, 2014).

that the trial court accepted the explanation as to Ms. Laury to be an unreasonable determination of fact under 42 U.S.C. § 2254(d)(2). *Accord Rice v. White*, 660 F.3d at 259 (where the record made clear that the trial judge rejected the prosecutor's proffered race-neutral reasons for the exclusion of two African-American jurors, the court "unreasonably determined, in light of the record, that the trial court did not discredit the prosecutor's proffered race-neutral reasons for striking the challenged jurors, within the meaning of § 2254(d)(2).").

Because the Court has determined that the AEDPA's relitigation bar does not preclude consideration of Petitioner's claim pursuant to § 2254(d), the next question is whether Petitioner can prevail on his underlying constitutional claim. *Rice*, 660 F.3d at 259.

Under the *Batson* three-step analysis, this Court must first determine if the defendant has made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. *Batson*, 476 U.S. at 96-98. Second, if the requisite showing has been made, the burden shifts to the prosecutor, who must present a race-neutral explanation for the strike. *Id.* at 97-98. However, as the Supreme Court has explained: "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991).

The prosecutor's explanation for striking Ms. Laury was:

We were concerned about her being a very dual-oriented person.[4] She is in a job where she's in quality assurance and she was -- a time when I asked her questions, she actually added additional information to a question I asked, which kind of struck me as being odd.

She also was a person that had experience with misidentifications. And I had a concern in response to some questions that were asked by Mr. Jackson as to whether or not she would unfairly associate herself or, at least, not give the State proper consideration with respect to our side of the story on identification and information.

She also made a statement that when Mr. Jackson was asking her about what she would need. With respect to making an identification, she made statements about how she might -- she might judge an identification in a certain way, if there was evidence that established the statute for certain procedure or if the dates that were given didn't match up to the identification. So that concerned me about her ability to fairly consider the State's side of this, and that's it.

(Doc. 10-26, PAGEID #1531-1532). The Court finds that this constitutes a race-neutral explanation for striking Ms. Laury. *Accord Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("Although the prosecutor must present a comprehensible reason,'[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices.").

At the third step, this Court must determine whether the defendant has carried his burden of proving purposeful discrimination. *See Batson*, 476 U.S. at 98. "This final step involves evaluating 'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Rice*, 546 U.S. at 338 (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995)). "'[T]he court presumes that the facially valid reasons proffered by the [party exercising

---

[4]The Court assumes that this is a typographical error in the transcript and should read "detail-oriented person."

the peremptory challenge] are true.'" *Braxton v. Gansheimer*, 561 F.3d 453, 459 (6th Cir. 2009) (quoting *Lancaster v. Adams*, 324 F.3d 423, 433 (6th Cir. 2003)).  Therefore, a *Batson* challenge ultimately "comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.*  Trial-court findings on the issue of discriminatory intent must be afforded "great deference." *Hernandez v. New York*, 500 U.S. 352, 364-66, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).  As the Supreme Court has explained, this level of deference "makes particular sense" because:

> [t]here will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.  As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 364-65 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)).  Therefore, in the absence of exceptional circumstances, this Court defers to state-court factual findings. *See id.* at 366.

Here, the record is clear that the trial court rejected the prosecutor's reasons for striking Ms. Laury.  The trial court stated: "All right. I find that the State hasn't given a race-neutral explanation, so I'm gonna allow your Batson challenge . . ." (Doc. 10-26, PAGIED # 1533).  While the trial court did not provide much discussion of the reasons behind this conclusion, the record shows that defense counsel pointed out to the court that the prosecutor made a total of three peremptory challenges, and two of those

challenges had been used to strike African-American jurors. (Doc. 10-26, PAGIED # 1528). Defense counsel also pointed out that Ms. Laury "said that she could be fair and impartial. I think every juror on there raised their hand when he asked if they were in an exactness profession, all of the jurors are in those type of professions." (Doc. 10-26, PAGIED # 1532). This Court finds that "[i]n light of the high degree of deference given to the trial court's credibility assessment, nothing in the record suggests that the trial court clearly erred in finding purposeful discrimination" in the striking Ms. Laury. *See Rice*, 660 F.3d at 259. Therefore, this Court concludes, as the trial court concluded, that *Batson* violation occurred during jury selection.

"In the absence of any remedial action undertaken by the trial court, the existence of an unmitigated *Batson* violation requires that the conviction be vacated." Rice, 660 F.3d at 260 (citing *Batson*, 476 U.S. at 100). Therefore, Petitioner's Petition is GRANTED as to Ground Three.

## E. Ground Four: Non-disclosure of witnesses

In Ground Four, Petitioner claims that the trial court violated his due process rights by erroneously certifying two witnesses for non-disclosure. The Magistrate Judge noted that this claim was presented to the First District Court of Appeals, which decided that the trial court properly concluded that these witnesses feared for their safety and therefore it was not an abuse of discretion to certify the witnesses under Ohio Criminal Rule 16(D)(1). The Magistrate Judge concluded that the First District's decision was not contrary to or an objectively unreasonable application of Supreme Court precedent. The Magistrate Judge noted that the Supreme Court has never held that the state has a constitutional obligation in a criminal case to reveal the identity of its witnesses. The

Court finds no error in the Magistrate Judge's conclusion that Ground Four should be dismissed on the merits.

### F. <u>Ground Five: Expert witness</u>

In Ground Five, Petitioner claims that the trial court violated his due process rights by limiting the testimony of his eyewitness identification expert witness and his expert on the reliability of jailhouse informants.

With regards to the eyewitness identification expert—Dr. Jennifer Dysart—the Magistrate Judge noted that Petitioner raised this issue on direct appeal, and the First District Court of Appeals concluded that the trial court did not abuse its discretion in excluding part of Dr. Dysart's opinion on the ultimate issue of Chandler's credibility. The Magistrate Judge found that Petitioner has not shown that the Supreme Court has held that an ultimate opinion by an expert on the credibility of a witness must be admitted.

With regards to the expert witness on jailhouse informants—law professor Christo Lassiter—the Magistrate Judge noted that this issue was also raised by Petitioner on direct appeal, and the First District concluded that Petitioner was permitted to cross-examine the jailhouse informant and the proffered testimony would not have further illuminated the subject for the jury. The Magistrate Judge explained that the subject of reliability of jailhouse informants relates to the credibility of witnesses, which the law deems fully testable by cross-examination. The Magistrate Judge stated that there was no Supreme Court decision holding that such testimony must be admitted.

Therefore, the Magistrate Judge concluded Ground Five should be dismissed on the merits. The Court finds no error in this conclusion.

### G. **Ground Seven: Victim's medical and psychological records**

In Ground Seven, Petitioner claims that the trial court erred by excluding Chandler's medical and psychological records which would have allegedly shown his state of mind at the time of the offense, and when he later identified Petitioner. The Magistrate Judge noted that Petitioner raised this claim on direct appeal, and the First District Court of Appeals held that it was not an abuse of discretion for the trial court to exclude records from 2004 which indicated Chandler had psychiatric disorders and a history of drug abuse. The First District explained that Petitioner could not show a connection between Chandler's psychiatric condition in 2004 and his ability to identify his assailant in 2010. The Magistrate Judge found that Petitioner had not shown there is a constitutional limit on the enforcement of state relevancy rules by the exclusion of outdated medical records. Therefore, Magistrate Judge concluded that Ground Seven should be dismissed on the merits. The Court finds no error in this conclusion.

### H. **Ground Eight: Ineffective assistance of trial counsel**

In Ground Eight, Petitioner claims that he received ineffective assistance of trial counsel when his attorney failed to raise a *Weatherford v. Bursey* claim in suppression; failed to present exculpatory evidence; and failed to properly instruct Petitioner's expert on the facts of the crime. The Magistrate Judge explained that Petitioner raised this claim on direct appeal, and the First District found no deficiency on the part of trial counsel. The Magistrate Judge concluded that this decision was not an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). The Court finds no error in this conclusion.

### I.  Ground Nine: Improper jury instructions

In Ground Nine, Petitioner claims that the trial court erred in instructing the jury by permitting an inference of guilt from Petitioner's flight without sufficient evidence of his motive; and failing to instruct the jury on Ohio's identification statute.  The Magistrate Judge noted that Petitioner raised this claim on direct appeal, and the First District Court of Appeals decided that the instructions were proper.  The Magistrate Judge noted that alleged errors in jury instructions normally do not rise to the level of federal constitutional violations.  After reviewing the instructions given, the Magistrate Judge found that there was no error in the jury instructions which was cognizable in federal habeas corpus, and therefore Ground Nine should be dismissed.  The Court finds no error in this conclusion.

### J.  Ground Ten: Prosecutorial misconduct

In Ground Ten, Petitioner claims that he was deprived of a fair trial by prosecutorial misconduct. The Magistrate Judge noted that Petitioner raised this claim on direct appeal, and the First District Court of Appeals held that Petitioner was not prejudiced by the prosecutor's comments.  The Magistrate Judge found that Petitioner's claimed instances of prosecutorial misconduct were either properly decided by the First District or procedurally defaulted.  Therefore, the Magistrate Judge concluded that Ground Ten should be dismissed.  The Court finds no error in this conclusion.

### K.  Ground Eleven: Insufficient evidence

In Ground Eleven, Petitioner claims that the convictions were both against the manifest weight of the evidence and supported by insufficient evidence.  The Magistrate Judge explained that a manifest weight claim is not cognizable in habeas corpus.  As to

the insufficient evidence claim, the Magistrate Judge explained that the state decisions are entitled to two levels of deference. *Accord Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) ("Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson* [*v. Virginia*, 443 U.S. 307 (1979)]; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA."). The Magistrate Judge identified evidence in the record which would support Petitioner's conviction, and concluded that the First District's holding that Petitioner's conviction was supported by sufficient evidence was not an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979). Therefore, the Magistrate Judge concluded that Ground Eleven should be dismissed on the merits. The Court finds no error in this conclusion.

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court **ADOPTS in PART and DECLINES to ADOPT in PART** Magistrate Judge's July 14, 2017 R&R and August 15, 2017 Supplemental R&R (Docs. 19, 22). Accordingly, it is hereby **ORDERED** that:

1. Petitioner's Petition (Doc. 1) is **GRANTED in PART** as to Ground Three;

    a. The writ of habeas corpus is conditionally granted as to habeas Ground Three. If no appeal is taken, the State shall release Petitioner unless it takes steps to re-try him within one hundred and eighty (180) days of the date of this Opinion and Order, otherwise within one hundred and eighty (180) days after any appellate avenues are exhausted and a mandate issued.

    b. Respondent shall serve a copy of the Opinion and Order to the appropriate State Court and Prosecuting Attorney within fourteen (14) days of entry of the Opinion and Order. Respondent must file a proof of service with this Court.

2.  The remainder of Petitioner's Petition (Doc. 1) is **DENIED** and **DISMISSED** with **PREJUDICE;**

3.  A certificate of appealability is not issued with respect to the claims alleged in Grounds Two, Four, Five, Six, Seven, Eight, Nine, Ten and Eleven of the petition, which were addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented in those grounds for relief are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4.  In addition, a certificate of appealability is not issued with respect to the subclaims alleged in Ground Eight of the petition which this Court has concluded is waived and thus procedurally barred from review, because under the first prong of the two-part standard enunciated in *Slack*, 529 U.S. at 484-85, "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling. Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of that test. Nevertheless, assuming that "jurists of reason" could find the procedural ruling debatable, the Court further finds that the second prong of the *Slack* test has not been met because "jurists of reason" would not find it debatable whether petitioner has stated a viable constitutional claim in the defaulted grounds for relief. *See id.* at 484.

5.  A certificate of appealability is issued with respect to the claims alleged in Ground One; and

6.  This matter shall be **CLOSED** and **TERMINATED** from the active docket of this Court.

   **IT IS SO ORDERED.**

                                        */s/ Michael R. Barrett*
                                        JUDGE MICHAEL R. BARRETT